THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* EDWARD A. NOBLETT, Appellant.

Crimes — larceny — trial — courts may not create a new definition of a particular crime — no common-law larceny where owner has parted with title as well as possession of property — proof that defendant received money as rent of property, possession of which he failed to deliver, insufficient to sustain conviction for common-law larceny where purpose was that defendant might have use of money immediately.

1. It is the function of the Legislature to determine whether modern conditions dictate a wider ·definition of acts· which should subject the wrongdoer to criminal responsibility. Courts may not create a new definition of a particular crime because judges may believe that the limits previously fixed are too narrow.

2. Where the owner has parted not only with possession but with title to property or money there can be no common-law larceny.

3. Upon trial of an indictment charging common-law larceny, proof that defendant had received from the complaining witness a sum of money as rent for an apartment, possession of which he ·failed to deliver, is insufficient to warrant a conviction where it appears that the money was paid under a contract requiring payment of the rent in advance, the purpose of which was that the defendant might have the right to use the money immediately for his own purpose and it was not said that the delivery of the money was conditional upon the delivery of· possession of the apartment. Assuming that defend-

ant obtained money by trick or device he is not guilty of larceny for the owner was induced to give not only possession but title. (*People v. Miller,* 169 N. Y. 339; *Commonwealth* v. *Rubin,* 165 Mass. 453, 455, distinguished.)

*People* v. *Noblett,* 218 App. Div. 763, reversed.

(Argued January 17, 1927; decided February 23, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 19, 1926, unanimously affirming a judgment of the Court of General Sessions of the County of New York, rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree as a second offense.

*Oswald N. Jacoby* for appellant. The defendant was unjustly convicted of common-law larceny. (*People* v. *Dumar,* 106 N. Y. 502; *People* v. *Cohen,* 148 App. Div. 205; *People* v. *Ehrlich,* 190 App. Div. 302; *Zink* v. *People,* 77 N. Y. 114.)

*Joab H. Banton, District Attorney (Felix C. Benvènga* and *Archibald Firestone* of counsel), for respondent. The defendant was properly convicted of common-law larceny. (*People* v. *Dumar,* 106 N. Y. 502; *People* v. *Katz,* 209 N. Y. 311; *People* v. *Miller,* 169 N. Y. 339; *People* v. *Neff,* 191 N. Y. 210; *Smith* v. *People,* 53 N. Y. 111; *Hildebrand* v. *People,* 56 N. Y. 394; *Loomis* v. *People,* 67 N. Y. 322; *Shipply* v. *People,* 86 N. Y. 375; *Justices* v. *People,* 90 N. Y. 12; *People* v. *Morse,* 99 N. Y. 622.)

LEHMAN, J. In March, 1926, the defendant was the tenant of an apartment on Riverside drive in the city of New York. The term of his lease had expired, but right of occupation and possession continued under the statutes known as the Rent Laws. He inserted an advertisement in the New York *Times* offering to " subrent by month or year " his furnished apartment. The complaining witness read the advertisement on March 12th. He com-

municated with the defendant and pursuant to appointment he met the defendant on the same day at his apartment. The complaining witness agreed to lease the apartment till June 1st; possession was to be given on March 20th. The rent of $550 was to be paid in advance. The complaining witness paid $40 on account and agreed to pay the balance of the rental in advance the following morning, March 13th. He received from the defendant a written receipt, signed by the defendant, for the $40 he paid on account. The terms of the agreement were embodied in it. On the following morning the complaining witness paid the defendant the sum of $510, the balance of the agreed rental, but he has not received possession, either on March 20th, or at any other time, of the apartment which the defendant agreed to rent to him.

The indictment against the defendant contains two counts. The first count charges in effect that the defendant obtained the sum of $510 from the possession of the complaining witness " by false and fraudulent pretense and representation." The only false representation which is alleged is that the defendant " then and there owned a lease of Apartment 12C at premises 131 Riverside Drive, New York County, covering a period of eight years, which said lease then had still two years to run." The second count charges in common-law form the larceny of the same moneys. At the close of the People's case the trial justice dismissed the first count of the indictment. His ruling was not based upon any technical distinction between common-law larceny by trick and device, and obtaining money or property by false pretense. It was based upon a holding that the evidence showed beyond possibility of dispute that while the defendant did not have a lease of the apartment with two years to run, yet, if he continued to pay rent, he did have right to possession under the Rent Laws extending beyond the term for which he agreed to give a sublease and that, therefore, the

alleged false representation, even if made, was not material. At the time the motion was made, the evidence was clearly insufficient to show that the complaining witness had parted only with possession of the moneys, reserving title thereto, and the trial judge was apparently not under any misapprehension that in such circumstance a. conviction for common-law larceny could be sustained. He did, however, permit the complaining witness to be recalled in an attempt to show that he gave the defendant the money only upon condition. After additional testimony was given, the trial judge denied the motion to dismiss the second count of the indictment. The jury convicted the defendant upon the second count, and the only question which requires serious consideration is whether the evidence is sufficient to show common-law larceny by trick and device. If the conviction must be reversed, it is not because of mistaken choice of which crime the evidence shows was committed.

The complaining witness parted with his money under a contract which required payment in advance for rental of an apartment. The receipt given by the defendant so recites. The complaining witness testified that he paid the money on condition that he should receive possession of the apartment. Of course the complaining witness paid the money with the expectation that he would in return receive the agreed consideration, but the evidence seems to show clearly that the complaining witness parted not only with temporary possession of the money but with his general property in it. The purpose of payment of the rent in advance was that the defendant might have the right to use the money immediately for his own purpose. He told the complaining witness in effect that he would use it to pay his rent to the landlord of the apartment which he was agreeing to sublease to the complaining witness. He did use it for the purpose of paying rent which was in arrears. Perhaps the defendant did not intend to give to the complaining witness

possession of the apartment for which rent was payable in advance.  He may have been guilty of conduct which was morally reprehensible, but he is not guilty of larceny by trick and device if the complaining witness transferred to the defendant not merely possession but ownership of the money.  We may not pass upon the defendant's moral conduct, or even upon the question of whether he may have been guilty of some crime other than common-law larceny.  The sole question before us is whether he has been properly convicted of that crime.

Narrow technical distinctions by which a wrongdoer may escape the consequences of a crime hinder the administration of justice.  The courts which administer the law fail to function properly when the penalty which the law has placed upon the commission of a crime may be evaded by the proven criminal through subtle reasoning based on obsolete theory.  These are truisms which should require no repetition, but they may not lead the court to create a new definition of a particular crime because judges may believe that the limits previously fixed are too narrow.  It is the function of the Legislature to determine whether modern conditions dictate a wider definition of acts which should subject the wrongdoer to criminal responsibility.  We may not assume that function even where the established definition of a crime may be based upon distinctions which seem to us at the present time inconsequential.  We may not hold that acts come within such definition which under recognized authority have been hitherto excluded.

A long line of authorities in this and other jurisdictions have in the past laid down the limits which define the crime of larceny when possession of property is obtained by a trick or device.  On the one hand, we have the cases where " the possession of the money or goods said to have been stolen has been parted with, but the owner did not intend to part with the property in them, so that part of the transaction is incomplete and the parting with

the possession has been obtained by fraud — that is larceny." Per Lord COLERIDGE in the case of *Queen* v. *Russett* (1892, 2 Queen's Bench Division, 312). On the other hand, we have the cases where the owner has parted not only with possession but with title to property or money — in such cases there can be no common-law larceny.

In some jurisdictions such distinctions have been obliterated by statute. (See 24 and 25 Victoria, chap. 96, sections 72 and 88; Stephen's Digest of Criminal Law [7th edition], p. 483; Massachusetts Revised Laws, 1902, chap. 208, sections 26, 39, 40 and 67; *Commonwealth* v. *McDonald,* 187 Mass. 581; " Larceny, Embezzlement & Obtaining Property by False Pretenses," 20 Columbia Law Review, 318.) In this State the distinction has been maintained, at least for some purposes, in the statute. True, the statute provides that not only a person who *"takes"* property " from the possession of the true owner, or of any other person " but also a person who *"obtains"* property " from such possession by color or aid of fraudulent or false representation or pretence " is guilty of larceny (Penal Law, section 1290), but a defendant may not be convicted upon the charge of *"taking"* the property of another from the possession of the true owner where the owner parted not only with the possession but with the title. The section includes in the definition of larceny " every act which was larceny at common law besides other offenses which were formerly indictable as false pretenses or embezzlement " (*People* v. *Miller,* 169 N. Y. 339), but a defendant must be charged with the particular offense the People claim he has committed. (*People* v. *Dumar,* 106 N. Y. 502.) In this case the dismissal upon failure of proof of the count of the indictment which charges the defendant with obtaining money by false pretenses leaves open only the question of whether the evidence sustains the charge contained in the indictment of common-law larceny by trick and device.

1927.] Opinion, per LEHMAN, J. [244 N. Y. 355]

The cases where the courts have been called upon to determine whether the evidence shows common-law larceny are so numerous that extended analysis, or even reference, must be limited to a few cases selected largely because the People maintain that they constitute authority to sustain the conviction. The fundamental distinction already pointed out between larceny and obtaining property by false pretenses has hardly been questioned. Where the owner has voluntarily and completely passed title there can be no common-law larceny by trick and device, though the owner was induced to part with title by fraud. Difficulty arises only in the determination of whether the title has passed *completely*. Here the money was delivered in return for the promise to deliver possession of the premises one week later under a lease to continue to June 1st. Nothing was said that the delivery of the money was conditional upon the delivery of possession of the apartment. On the contrary, it was expressly agreed that payment should be " in advance," and the defendant had the right immediately upon receipt of the money to use it for his own purpose. The money was received as the result of a contract, but the defendant did not by contract agree that he would use it for any specific purpose.

Distinction between delivery of money or property upon the credit of future promise, and delivery of money or property upon express or implied condition has been pointed out in the case of *Regina* v. *Slowly* (12 Cox Criminal Cases, 269). In that case the complaining witness unloaded onions at a place directed by the defendants, relying upon the defendants' statement that " you shall have your money directly the onions are unloaded." The court there held that the defendants were guilty of larceny, for the passing of the title of the onions and payment for them were intended to be simultaneous, and until payment was made, delivery was incomplete. The court nevertheless stated: " If in this case it had been

intended by the prosecutor to give credit for the price of the onions even for a single hour, it would not have been larceny." To the same effect is the case of *Queen* v. *Russett* (1892, 2 Q. B. D. 312), where the complaining witness gave the defendant a sum of money as part of the purchase price of a horse upon an agreement that complete delivery of purchase price and delivery of the horse should be part of the same transaction and constitute concurrent conditions. In the case at bar, however, the complaining witness did intend to give credit to the defendant. The contract between the parties could not be completely performed till the defendant gave possession of the apartment, but nothing remained undone under the contract which constituted condition to the right of the defendant to use the money as his own. Even if he acquired that right by fraud, he has not by trespass taken the property of defendant, and is not guilty of larceny.

In this State the rule was stated in *Smith* v. *People* (53 N. Y. 111): " If by trick or artifice the owner of property is induced to part with the custody or naked possession to one who receives the property *animo furandi*, the owner still meaning to retain the right of property, the taking will be larceny; but if the owner part with not only the possession, but the right of property also, the offense of the party obtaining them will not be larceny, but that of obtaining goods by false pretences." In that case the statement of facts shows that the complaining witness " gave the prisoner a watch, chain and locket or cross and two dollars in money, belonging to her husband, which property he was to pawn and give the ticket and money to her husband." Clearly the prisoner did not obtain the right to treat the property as his own; possession was given to him only for a special purpose and until the purpose was carried out right of property remained, and was intended to remain, in the original owner and the prisoner was only the custodian. He might, therefore, be held guilty of larceny.

In *Hildebrand* v. *People* (56 N. Y. 394) " the prosecutor handed the prisoner, who was a bartender in a saloon, a fifty dollar (greenback) to take ten cents out of it in payment for a glass of soda." The court held that under these circumstances " the prosecutor retained the control and legally the possession and property." " It was an incomplete transaction, to be consummated in the presence and under the personal control of the prosecutor. There was no trust or confidence reposed in the prisoner, and none intended to be. The delivery of the bill and the giving change were to be simultaneous acts, and until the latter was paid, the delivery was not complete."

In *Loomis* v. *People* (67 N. Y. 322) the complaining witness delivered money as a stake upon the throw of dice. The court there held that the delivery of the stake was understood and intended to be complete only if and when the complaining witness lost the throw. Obviously title to money staked upon a chance is intended to pass only when the chance has ended; and delivery of money or property as a stake becomes complete only when the contingency upon which title is intended to pass has eventuated. To the same effect is the case of *Queen* v. *Buckmaster* (1888, 20 Q. B. D. 182).

In *Shipply* v. *People* (86 N. Y. 375) the defendant obtained possession of goods without paying for them, though the goods were sent to him C. O. D. By contract between the parties, delivery of the goods and payment therefor were to be simultaneous. Delivery was incomplete till payment was made and no title could pass till that time.

In all these cases the owner of the goods or moneys made delivery to the defendant upon an implied or express understanding and condition that delivery should not be complete and title should not pass until the defendant did a stipulated act or other stipulated contingency arose. Until that time the defendant was the bare custodian. Here the complaining witess reposed confidence and

trust in the defendant. He made delivery to him in reliance upon promise to give him possession of the apartment a week thereafter. Delivery of the money by the owner and performance by the defendant of the promise were not intended to be simultaneous. The owner gave the defendant the right to deal as he wished with the money, even before stipulated performance on his part. These circumstances differentiate the case under review from the earlier cases so completely that under the reasoning of these cases opposite conclusion seems dictated in this case, and that conclusion is fortified by other decisions of this court. (*Zink* v. *People,* 77 N. Y. 114; *People* v. *Dumar, supra.*)

It is said that the decision of this court of *People* v. *Miller* (169 N. Y. 339) presents an analogous situation and supports the judgment of conviction in this case. The defendant there duped a large number of people and induced them to deposit money with him to be used in speculation by a representation or promise that he would pay a " dividend of ten per cent weekly until the deposit was withdrawn." The court held that a " depositor " intended to part only with the manual custody of money delivered to the defendant. The defendant acquired no right to use it as he saw fit, but might use it only for speculation through a " syndicate " in which each depositor should have an interest. Unless or until the money was used for the purpose for which it was delivered, delivery was not complete and title did not pass. The court pointed out that in that case the defendant obtained the property by false promise, but it was a false promise " as to future operations with the property." In the present case if there was false promise by the defendant it did not concern " future operations with the property." In the *Miller* case the owner parted with possession of property only for the purpose of enabling the defendant to carry out his promise to use it for the owner's benefit, and to the extent necessary to effectuate that purpose.

In the present case the owner parted absolutely with all control of the money and vested in the defendant full and complete right to use it for his own purpose and benefit, relying upon the defendant's promise to transfer in the future the stipulated consideration for the money. In such case, under all authorities, there is no trespass and no larceny.

Some reliance is placed upon the statement in the opinion by Mr. Justice HOLMES in *Commonwealth* v. *Rubin* (165 Mass. 453 at p. 455) that: " It may be assumed that acceptance of a chattel upon a contract or promise, with intent not to carry out the promise but to convert the chattel " may constitute larceny; citing *Commonwealth* v. *Barry* (124 Mass. 325); Bishop on Criminal Law (8th edition, section 813). Read in its context and in the light of the authorities cited it is evident that the words " contract or promise " refer to a contract or promise in regard to future operations with the property and not to a contract where the owner parted with title to property upon faith in a promise given by other party. Indeed, Mr. Justice HOLMES in the previous sentence has stated the rule that there may be larceny " when the possession of a chattel, *but not the title,* is gained by a trick or fraud with intent to convert it " (italics are ours). In this case even if we assume that the defendant did obtain money by trick or device, he is not guilty of larceny for the owner was induced to give not only possession but title.

Judgment of the Appellate Division and that of the trial court should be reversed and the indictment dismissed.

CRANE, J. (dissenting). This appeal has to do with a question of practice and pleading. The guilt of the defendant does not enter into it at all.

On the 12th day of March, 1926, Edward A. Noblett advertised in the New York daily papers that he would rent his apartment, 131 Riverside drive, by the month or year, furnished. The complainant, Stephen Bourne,

answered the advertisement in person, and was told by
the defendant that he had a two-year lease; that he would
give him possession March 20 until June 1 for $510.
The statements were false, as the defendant was a hold-
over tenant, with proceedings pending to dispossess him.
The jury have found on competent evidence that his
advertising was a mere trick and device for obtaining
money; that he never intended to give possession of his
apartment to Bourne; but at the time he took Bourne's
money, he intended to steal it.    After getting the money,
the defendant refused to deliver possession of the apart-
ment, and was found inserting like advertisements in the
papers to catch other victims.    We start the consideration
of this case, therefore, with these facts: The defendant
put a false advertisement in a newspaper, indicating that
he would rent and deliver possession of his apartment;
Bourne answered it, and paid $510 for possession from
March 20; the defendant never intended to give possession
of his apartment; he had no right to give possession of it,
but he intended by this trick and by this device to get
and steal the money.    All these matters were fairly
submitted to the jury on a charge of the court covering
these points.    None of the elements going to make up
the crime of larceny were omitted in the trial of the case.
The jury found against the defendant, and as there is
evidence to support their conclusion, we in this court
are bound by it.    Therefore, I say we start with the
crime of larceny, as defined by section 1290 of the Penal
Law, proved against this defendant.    The question is:
" Did the indictment state the crime of which the
defendant was convicted.'

All that we have in the Code of Criminal Procedure
(Sect. 275) regarding the indictment is:

" The indictment must contain:

" 1. The title of the action, specifying the name of
the court to which the indictment is presented, and the
names of the parties;

" 2. A plain and concise statement of the act constituting the crime, without unnecessary repetition."

All this the indictment in this case contained. The plea in this court is that the defendant, although guilty, was tried on the wrong count. In brief, the indictment consisted of two counts. The first accused the defendant of grand larceny in the second degree as a second offense, in that on the 13th of March, 1926, he obtained money from Stephen Bourne by means of false and fraudulent representations, in that he represented that he owned a lease of apartment 12C at premises 121 Riverside drive, New York county, with two years to run; all of which was false, and by means of which he got $510 from Bourne. The second count accuses the defendant of grand larceny as a second offender, in that on the day aforesaid, he did steal, take and carry away from Stephen Bourne personal property of the value of $510. The defendant was indicted as a second offender because he has been twice before convicted of larceny.

The first count is commonly known as obtaining money by false pretenses; the second is known as common-law larceny. Both are now included in the one provision of section 1290 of the Penal Law, defining larceny. No distinction whatever is now made in the definition of larceny between the common-law larceny and larceny by false pretenses and representations. There is a distinction which has grown up out of the cases, purely artificial, regarding the pleading. If a man is to be prosecuted for obtaining money by false pretenses, the pretenses must be set forth in the indictment *provided*, and provided only, that title has passed to him accompanying possession. If, on the other hand, he obtains by the same false pretenses merely the possession of the property, title remaining in the owner, it is a common-law larceny, and the false pretenses and representations need not be alleged in the indictment. That is, the same false representations may constitute larceny at common law, or the obtaining

of property by false pretenses; in the first case the representations need not be alleged in the indictment; in the second, they must be. The determining factor on this question of pleading is the passing of title, not the representations.

Here we have inserted into our criminal practice upon a mere question of pleading all the uncertainties of the Uniform Sales Act, regarding the right to bring action for price, or an action for damage upon breach of contract. And this is no exaggeration, for the very situation confronted the trial judge and district attorney in this case. After a colloquy lasting over many pages in the record, the judge dismissed the first count and forced the district attorney to proceed on the second count, saying:

" The case will be submitted to the jury on the theory of common law larceny by trick and device * * * the testimony has been to the effect that he (Bourne) gave this money intending that he get possession of the premises. The jury may determine whether or not when he gave him the money he parted with title and possession, or whether he parted only with possession."

This ruling came at the end of the People's case; all the evidence was in. Surely it cannot be said that there was no evidence to sustain a finding that a larceny of some kind had been committed, either larceny by false representations or else common-law larceny. All the evidence for the People was before the court and jury. Which was it? The indictment covered both, and was broad enough and full enough to sustain a verdict upon one theory or the other. All the evidence going to show false representations need not be alleged in the indictment.

The same false statements proved either larceny by false representations or else larceny at common law by trick and device. The deciding point, as heretofore stated, would be the passing of title. To sustain the second count, it would be necessary to show that title did not pass with possession. The trial proceeded upon

1927.]          Dissenting opinion, per CRANE, J.     [244 N. Y. 355]

this second count.   And now in the judgment of some of my associates this was fatal; title had passed and there was no common-law larceny.   To me, this is a highly technical rule of pleading which need not be applied to this case.   It serves here no use whatever.   It is not an answer to say that the defendant should be informed of the false pretenses charged against him; he is not so informed when the false pretenses obtain possession but no title.   The passing of title is not something which we can see and handle; it exists merely in the intention of the parties.

Now this old rule of pleading has been repeatedly criticised, and the courts have endeavored to get away from it.   Under the old Revised Statutes (2 Rev. Stat. part 4, chap. 1, art. 4th [year 1828]), cheats, or obtaining property by false pretenses was made a crime in a separate article (Sect. 53) for which a distinct punishment was enacted.   Article 5th provided for another crime, which was larceny and embezzlement, and different punishment. Section 63 thereof enacted that feloniously taking and carrying away the personal property of another was larceny.   This was the old common-law larceny.   From these separate divisions of crime, grew up the practice of pleading the false representations in the first case, and omitting them in the second.   This division was continued in the Revised Statutes of 1875.   (See art. 4th and art. 5th of part IV, chap. 1 of the Rev. St. vol. 3, 6th ed.) The Penal Code, in section 528, and now the Penal Law, in section 1290, combined both offenses into one with one punishment, to be known as larceny.   For myself, I can see no reason why there should be any distinction in pleading; but the courts have made this distinction, calling attention to the fact that the crimes frequently merge into one; that the same false pretenses may make the crime of obtaining money by false pretenses or the common-law larceny; that the distinction between them is often shadowy.   Thus, in *People* v. *Dumar* (106 N. Y. 502), DANFORTH, J., said:

" In either case the property may have been obtained

by artifice or fraud; but if in one the owner intended to part with his property absolutely and to convey it to the defendant, but in the other intended only to part with the temporary possession for a limited and specific purpose, retaining the ownership in himself, the latter case would be larceny, but the former would not. It was, therefore, uniformly held that if a person, through the fraudulent representations of another, delivered to him a chattel intending to pass the property in it, the latter could not be indicted for larceny but only for obtaining the chattel under false pretenses."

And the judge added:

" The distinction was adhered to, although with reluctance, and in deference only to earlier cases."

This *Dumar* case also held that if the crime be that of obtaining property by false pretenses, the false pretenses must be set forth in the indictment. So too, *People* v. *Blanchard* (90 N. Y. 314). In *Loomis* v. *People* (67 N. Y. 322, 329) this court said:

" There is, to be sure, a narrow margin between a case of larceny and one where the property has been obtained by false pretences. The distinction is a very nice one, but still very important. The character of the crime depends upon the *intention* of the parties, and that intention determines the nature of the offence. In the former case, where by fraud, conspiracy or artifice, the possession is obtained with a felonious design, and the title still remains in the owner, larceny is established. While in the latter, where title, as well as possession, is absolutely parted with, the crime is false pretences. It will be observed that the *intention* of the owner to part with his property is the gist and essence of the offence of larceny, and the vital point upon which the crime hinges, and is to be determined." And the court further said that the intention was a question for the jury. See, also, *Bassett* v. *Spofford,* regarding intention (45 N. Y. 387, 392); *Thorne* v. *Turck,* again calling attention to this " nice

distinction " (94 N. Y. 90); *Smith* v. *People* (53 N. Y. 111), where it was said: " Here the jury have found the intent to steal at the time of taking, which is all that is required to constitute larceny, where the mere possession is obtained by fraud or trick."

In *Commonwealth* v. *Rubin* (164 Mass. 453) it was held that a chattel accepted upon a contract or promise with intent not to carry out the promise, but to convert the chattel, amounts to larceny as it existed at common law. Mr. Justice HOLMES said: " There is the less cause for anxiety upon the point, in view of the merely technical distinction between larceny and embezzlement." And in this court in *People* v. *Miller* (169 N. Y. 339) it was held that obtaining possession of property upon a promise to do something did not constitute obtaining it under false pretenses, but did constitute larceny at common law; that such promise was a mere trick and device to get possession of property. This was the case of 500 per cent Miller, who got money on representations that he would pay enormous rates of interest. The money given to him was not to be held in kind; the title to the particular bills or specie invested passed to Miller. He promised to pay big interest for the money, or the use of the money. The money was used by him; it was stolen, and this court held it to be common-law larceny. Judge O'BRIEN said:

" It would be difficult to show that the defendant in this case made any material false statement concerning any existing fact. His statements were all promissory in nature and character. He represented to the public very little if anything concerning any fact existing at the time. His statements consisted in persuading the depositors that he could and would obtain for the use of their money large profits in the form of dividends."

Miller in this case was convicted under the same form of indictment as the second count of the indictment upon which the defendant has been convicted here. Continuing, the opinion stated:

" But the jury could have found that he did obtain the money by means of a fraudulent device, with the intent on his part at the time he received it to convert it to his own use; and also that the complainant intended to part with her possession merely and not with the title, and so the verdict convicting the defendant of larceny was warranted by the evidence."

The case against this defendant in my judgment comes within these rulings. The jury have found that Bourne did not intend to part with his money except upon a condition unfulfilled. When Stephen Bourne gave $510 to the defendant, it was with the understanding that he should receive possession of the apartment March 20. The defendant obtained the money by promising to give possession March 20. It was a false promise, made with intent to cheat. The jury have found that he never intended to keep the promise; that it was a mere device to obtain the money, and that Bourne did not intend to part with the title to his property, that is, give it to the defendant so as to make it his, except upon condition that he received the apartment. Under a fair charge explaining all these differences, of which we have been speaking, the jury have found the fact of intent, both of Bourne and of the defendant. Suppose that the defendant had held in his hand a diamond, and said to Bourne: " Give me $510 and I will give you this diamond." Upon getting the money, he runs away and refuses to give the diamond. Would there be any question as to larceny; that it was common-law larceny, obtaining money by trick, device and false pretense? Why then should there be any difference because the promise is made to take effect a day or a week after the receipt of the money instead of instantly, provided that at the time the promise is made, and the money obtained, there is the intent to steal, no intent to keep the promise, no intent to part with the money, except upon fulfillment of the condition. To my mind, we are refining this matter of pleading beyond all

usefulness. The defendant well knew what he was being tried for; no claim whatever was made that he was surprised or deceived; he himself testified and produced evidence to meet the charge and no assertion is even made by his counsel that he has any other proof to offer. At most, he pleads a technical rule of law as to a pleading which in his case has no merit. He obtained $510 by a trick advertisement, and a promise to give that which he did not have. This in my opinion constitutes a common-law larceny.

For these reasons, I believe the judgment of conviction should be affirmed.

CARDOZO, Ch. J., POUND and KELLOGG, JJ., concur with LEHMAN, J.; CRANE, J., dissents in opinion in which ANDREWS, J., concurs.

Judgment accordingly.