THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JEROME E. LEWIS, Appellant.

Fourth Department, March 5, 1930.

*Thomas Burns* [*Clarence L. Crabb* of counsel], for the appellant.

*Melvin F. Kinkley, District Attorney,* for the respondent.

SEARS, P. J.  The defendant was jointly indicted with Arnold C. Scott upon a charge of grand larceny.  The count of the indictment of which the defendant was found guilty is as follows: " That the said Jerome E. Lewis and Arnold C. Scott on or about the 14th day of September, 1923, at the City of Watertown in said County of Jefferson and State of New York, each aiding and abetting one another, with the felonious intent to deprive and defraud Estella M. Steele of Fifteen hundred Dollars ($1500.00) did then and there feloniously and fraudulently falsely pretend and represent that they would use for her benefit said sum of Fifteen hundred Dollars ($1500.00) in the purchase of stock in the Northern New York Home Building and Construction Company, a corporation about to be organized by them within a short time, under and by virtue of the Laws of the State of New York, and that said stock in said

Home Building and Construction Company would be delivered to her at the time of its organization and that said stock would be of the value of Fifteen hundred Dollars ($1500.00) or more.

" That said Estella M. Steele then and there, believing the false and fraudulent pretenses and representations so made by said Jerome E. Lewis and Arnold C. Scott, and being deceived thereby, was induced by them and by reason of such false and fraudulent pretenses and representations to deliver, and did then and there deliver to said Jerome E. Lewis and Arnold C. Scott the sum of Fifteen hundred Dollars ($1500.00), and that in fact and in truth, the pretenses and representations so made by said Jerome E. Lewis and Arnold C. Scott were then and there in all respects utterly false and untrue, as they, the said Jerome E. Lewis and Arnold C. Scott, well knew, and that no stock of said corporation at any time was delivered by said Jerome E. Lewis and Arnold C. Scott, or by either of them, to said Estella M. Steele, nor was said sum of Fifteen hundred Dollars ($1500.00) returned to her, or the proceeds thereof at any time, and that the said Jerome E. Lewis and Arnold C. Scott then and there feloniously and unlawfully did take away, steal and appropriate to their own use said Fifteen hundred Dollars ($1500.00), being the property of Estella M. Steele, against the form of the statute in such case made and provided and against the peace of the People of the State of New York, and their dignity."

The certificate of incorporation of the Northern New York Home Building and Construction Company was filed in the office of the Secretary of State on the 21st day of September, 1923, and in the office of the clerk of Jefferson county three days later. An organization meeting of the directors of the company was held at Watertown on the 2d day of November, 1923, at which time the defendant was elected secretary and treasurer. The record does not show what happened to the corporation after that time.

The enterprise to forward which the corporation was formed seems to have originated among a group of men, including the defendant and Scott, during the summer of 1923. Both the defendant and Scott were signers of the certificate of incorporation and both were named in it among the directors. Scott had previously been in the defendant's employ as a salesman of corporate securities. In August Scott and a man named Hodges induced the Mrs. Steele mentioned in the indictment to agree to invest in the Northern New York Home Building and Construction Company, and at that time she delivered to Hodges or Scott, or both of them, two $500 corporate bonds which were accepted and for which she was given a receipt in the following words:

"WATERTOWN, N. Y., *August* 11, 1923.

" Received this date from Mrs. Estella Mabel Steele, one $1,000 bond of the Collateral Bankers, Inc., of New York to be applied as payment in part for $5,000 worth of the stock of the hereinafter mentioned Company to be known as and if formed The Northern New York Home Building and Construction Company and this receipt is a pre-organization stock certificate for the value of $1,000 payment on the above mentioned $5,000 subscription the balance $1,500 to be derived from commissions from any sales of paint roofing or supplies purchased by this Company from Mrs. Estella Mabel Steele in the next six months from date.

" It is further agreed that in event of inability to make these payments only the amount of twice the paid in subscription shall be binding upon Mrs. Steele making a total subscription of $2,000.

" A. C. SCOTT,
" *Manager.*"

It was following this occurrence that the defendant first met Mrs. Steele. It is to be noted that the indictment does not relate to the transaction with respect to the two $500 bonds. Late in August, and early in September, 1923, Mrs. Steele had several interviews with the defendant. During some of them, the purchase from Mrs. Steele of paint was discussed. Mrs. Steele at this time was carrying on the business of a dealer in paints. In the course of these interviews, the enterprise planned, the Homebuilders corporation, was also talked about. The defendant disclosed to Mrs. Steele a knowledge of the prospective investment in the Homebuilders company which had been arranged with her by Scott and Hodges. As these conversations went on, defendant told Mrs. Steele that he and others had got the enterprise started; that Scott was working for him, and that he had appointed Scott secretary, or acting secretary and treasurer of the organization to do whatever he himself did not have time to take care of; that the company was to start building cottages, and that he would be able to give Mrs. Steele orders for paint. The defendant further told her that certain houses on Bishop street which he had formerly owned belonged to the company; that he had a charter for the company. Finally the defendant told Mrs. Steele that another organization known as the St. Lawrence Development Company wanted to buy the Homebuilders company, and he and all the others interested were ready to sell; that it would be " the most wonderful proposition ever put over in this district," and when Mrs. Steele said that she had made up .her mind not to pay for the balance of her stock because she would have to borrow $1,500 on her securities, the defendant said that she need not worry about that, that she would

get her money back all the sooner, even the $1,000 she first put in; " but," he said, " you must keep it very quiet; we don't want it to get out.". At one time the defendant told her that the charter had arrived, and that if she would pay for the balance of her stock, she would be ready to sell hers with that of the others interested. He told her that the $1,500, if she paid it into the company, together with the $1,000 which she had already put in, would be used in purchasing options on property at Sacketts Harbor which she had previously looked at in company with Hodges and Scott. All these statements were made by the defendant before September 14, 1923.

On the 14th day of September, 1923, Mrs. Steele met Hodges on the street in front of the Woodruff Hotel in Watertown. Together they went into the hotel and there she gave to Hodges her check for $1,500 payable to the order of Scott, for which Hodges gave her a receipt as follows:

" *Sept.* 14, 1923.

" NORTHERN NEW YORK HOME BUILDERS AND CONSTRUCTION COMPANY, INC.

" Received from Estella M. Steele $1500.00 balance due on 50 shares of stock of the above named Company which constitutes payment in full. " A. C. SCOTT,
" *Acting Sec'y & Treas.*"

Hodges had left her for a few moments and returned with the receipt. After this Mrs. Steele and Hodges went to the defendant's office where they met the defendant and Scott. While there, Mrs. Steele told the defendant that she had come to tell him that she had paid the balance of $1,500 on the stock as he had advised her to, and that she was now ready to sell to the St. Lawrence company with the rest. She said to the defendant, " Mr. Hodges told me when I went to make out my check in the name of the Homebuilders & Construction Company, Mr. Hodges says, ' make it out in the name of A. C. Scott, he is acting secretary and treasurer, and Mr. Lewis told me he wanted it that way because we are to keep this secret on account of being sold to the St. Lawrence Development Company, don't want to pay anything into the Homebuilders & Construction Company because we don't want this to get out.' " Then she also said, " Is that the way you want that check made out, Mr. Lewis? " The defendant said, " Yes, Mrs. Steele, that is all right." Mrs. Steele said, " Mr. Hodges where is that check," Hodges said, " I just handed it to Mr. Scott." Scott said, " Yes, Mr. Lewis, here it is." The defendant looked at it and said, " That is all right. * * * Mr. Scott would have to cash it as it was made out in his name."

Mrs. Steele then showed to the defendant the receipt which had been given to her by Mr. Hodges at the hotel. Another receipt was signed and delivered to her on this occasion which is as follows:

" WATERTOWN, NEW YORK,
" *September* 14, 1923.

" RECEIVED of Mrs. Estella M. Steele of 191 Stone St., of Watertown, N. Y. the following money Twenty-five hundred dollars — Payment in full. ............................................ to be turned over and become part of the assets of the Northern New York Home Builders and Construction Co., Inc., and for which she agrees to accept 25 shares of stock in said company to the amount of said property when the same has been appraised by the stockholders. This certificate is an Interim Receipt for the above mentioned shares.

" A. C. SCOTT
" *Acting Sec'y & Treas.*"

This receipt was shown to the defendant who told Mrs. Steele that it was all right; that he expected the stock certificates any day, but that the receipt was just as good as the stock certificates.

Scott cashed Mrs. Steele's $1,500 check on the day that it was given. A few days later, Mrs. Steele again saw the defendant, asked him whether the stock certificates had come, to which he answered, " No, Mrs. Steele, but I expect them most any day." Mrs. Steele then asked the defendant what property the options related to which had been secured from payments out of her $1,500 and the defendant replied, " The Sacketts Harbor property where those cottages are to be." Mrs. Steele said, " Oh, the same place where you put the $1,000 in too," and the defendant replied, " Yes."

In the last part of October, Scott left Watertown and his whereabouts were uncertain. Mrs. Steele became anxious about her investment. On the twenty-fifth of October there was a long talk between Mrs. Steele and the defendant in which the defendant said, among other things, that he himself had an investment of $5,000 in the Home Construction Company — had put his Bishop street property in. Although the defendant in the course of this conversation at one time denied that there was any such organization as the Northern New York Home Building and Construction Company, he finally told Mrs. Steele that he was going ahead with the company and that he would give her her stock, and Mrs. Steele said, " All right, Mr. Lewis, as long as you give me my stock, we will let it rest at that now." The defendant was hurt in an automobile accident about the middle of November, and was in the hospital

and at home most of the time until the beginning of the next year. In the early part of January Mrs. Steele again saw the defendant and demanded her money back, saying that she did not care to continue her investment with the company. The defendant replied, " I am going to give you your stock, and you will get your money back just as soon as that is sold." But Mrs. Steele insisted on receiving her money. A little later, according to Mrs. Steele, a proposition was made by defendant's son and daughter in the defendant's presence to give her $1,300 in cash and $1,200 in a note signed by the son and the daughter of the defendant, but settlement on this basis, although satisfactory to Mrs. Steele, was not carried through.

There is no evidence that the defendant profited in any way from the $1,500 payment given by Mrs. Steele to Scott. It was shown upon the trial that upon the same day that the check was given the defendant deposited in one of his bank accounts the sum of $700 in cash, but there was not the slightest proof that he received this money from Scott, and there was a plausible explanation of the deposit offered by the defendant, supported by documents to the effect that on the same day he had received the sum of $1,000 from a customer, of which sum the $700 deposited may well have been a part. (*People* v. *Bissert,* 71 App. Div. 118; affd., 172 N. Y. 643; *Heaton* v. *United States,* 280 Fed. 697.)

The question on this appeal primarily is whether the evidence supports the indictment. In our opinion it does not. In the first place, there is no proof of conspiracy or confederation between the defendant and Scott to get Mrs. Steele's money from her to the defendant's advantage. There was a determined effort in which both the defendant and Scott, as well as Hodges, participated to get Mrs. Steele to arrange for an investment in the Homebuilders Company before it was organized, and to get her money into the hands of Scott; but, as far as appears, it was got into the hands of Scott with the intention, at least on defendant's part, of having it paid over by him to the company when organized. The indictment alleges that the false and fraudulent representation was to the effect that the defendant and Scott were to use for her benefit the sum of $1,500 in the purchase of stock of the Homebuilding Company. To be false and fraudulent, this must imply that the defendant had the intention, at the time he was active in getting the money into the hands of Scott, that the money paid by her should not be used for the purchase of stock in the corporation. (*People* v. *Noblett,* 244 N. Y. 355; *People* v. *Miller,* 169 id. 339.) We have searched this voluminous record with care, and we find neither direct proof of such fraudulent intention, nor proof of

circumstances from which such fraudulent intent can fairly be inferred. There is no fact showing that the defendant was in any way a party to Scott's absconding, or to Scott's appropriation of the money to his own use. The money, to be sure, did not reach the place where it was intended to go, namely, the treasury of this proposed corporation. It did reach the pocket of Scott, and from his pocket we cannot trace it. Perhaps Scott all the time intended it to stay there. But Scott's intention is not material. It is the defendant's intention we are searching for. It could not help the defendant to have Scott steal the money. For all that appears in the record, the departure of Scott was as much a surprise to defendant as to any one else. Further, the defendant in January and February actually offered to give Mrs. Steele her stock, and this she refused. This, as the court substantially charged, disproves the allegation of the indictment in regard to her failure to receive stock. It is suggested, however, that the defendant's offer to give the stock to Mrs. Steele, and the defendant's participation in his children's offer of money and a note, are admissions of guilt. That is not so. Perhaps he was civilly responsible to Mrs. Steele. He was instrumental in having this money deposited with Scott; he was active in advancing the business enterprise; he did promise her in substance that this money was to go into the treasury of the company, and be used for the corporation's purposes. The offer of stock was in fulfillment of what the People claim to have been his obligation, and is consonant rather with innocence in the original transaction than with an intention that no stock was to be given.

We do not mean to intimate that the defendant's business methods, if Mrs. Steele is to be believed, were above reproach. Far from it. He seems to have deceived her in relation to the actual organization of the company, in regard to its having officers, in regard to its finances and in respect to the actual disposition made of the money given to Scott, and perhaps in other ways, but all this falls far short of showing the fraud alleged in the indictment, of which, alone the defendant has been found guilty. Our conclusion is that the evidence fails to establish the charge contained in the indictment.

The judgment of conviction, therefore, should be reversed and a new trial granted.

All concur. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment of conviction and order reversed on the law and facts and a new trial granted.