THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT B. STILLER, Appellant.

First Department, December 2, 1938.

*C. Dickerman Williams* of counsel [*Roy Guthman,* attorney], for the appellant.

*Charles C. Tillinghast, Jr., Deputy Assistant District Attorney,* of counsel [*William P. Rogers, Deputy Assistant District Attorney,* with him on the brief; *Thomas E. Dewey, District Attorney*], for the respondent.

CALLAHAN, J. The defendant has been convicted of grand larceny, second degree. The main question involved is whether the conviction was warranted under the indictment, which, as submitted to the jury, contained only a count of common-law larceny.

If the evidence warranted a finding by the jury that there was larceny by trick and device, as distinguished from false pretenses, conviction would be proper under a common-law count, though there was no proof of actual trespass. (*People* v. *Miller,* 169 N. Y. 339.)

The facts in this case, briefly stated, are that the defendant obtained $200 in cash from the complaining witness after the parties had discussed the merits of a stock known as the Vancouver Island Gold Mine Company. Defendant told the witness that he had controlling interest in the stock, and could get 2,000 shares thereof

at ten cents a share, and that it would open on the exchange on a specified date at not less than fifty cents a share. It was agreed that the 2,000 shares would be delivered by defendant as soon as an additional fifty-dollar transfer fee was paid. The complaining witness testified that he did not loan defendant the money, but gave it to him specifically to buy Vancouver Island Gold Mine stock. He testified further that he did not know where the stock he was to receive was to come from, whether it was defendant's stock or that of a corporation; that the 2,000 shares were to be held in defendant's name until the witness demanded it. There was evidence to the effect that defendant never had any Vancouver stock that was his own; that he did not use complainant's money to acquire any stock.

The trial court left to the jury the question as to whether the defendant obtained possession of the money for the special purpose of purchasing 2,000 shares of Vancouver Gold Mine stock, and whether it was thus obtained by trick, fraud or scheme, with intent to steal. It advised the jury that if the money was given to invest as the defendant saw fit, there would be no larceny.

We think that the evidence warranted the jury in finding that the money was obtained by trick and device under circumstances amounting to larceny.

The appellant contends that the evidence showed at most an obtaining of money by false pretenses.

There is often a very narrow distinction between a case of larceny and one where the property is obtained by false pretenses. The character of the crime depends on the intention of the parties and that intention determines the nature of the offense. In the former case the possession of the thing alleged to be stolen is obtained by fraud or artifice with a felonious design, and the title still remains in the owner. In the latter case, title as well as possession is absolutely parted with. (*Loomis* v. *People,* 67 N. Y. 322, 329.)

If there was sufficient evidence to permit the jury in this case to find that the complaining witness intended to part merely with possession, but not with title to his $200, then the conviction for common-law larceny was warranted, for there was proof that possession was obtained by fraud and artifice, and that there was felonious design, *i. e.*, an intent to steal.

There was evidence that the complaining witness intended to give the money for the limited purpose of enabling the defendant to procure 2,000 shares of Vancouver stock with it. The money, therefore, was to be passed to the owner of that stock and used for no other purpose. Defendant would get no title under such circumstances. True, the complaining witness did not know

whether defendant was to deliver 2,000 shares of stock he controlled, or stock he obtained in the open market, but the proof showed that no present purchase from defendant was intended.

This case differs from *People* v. *Noblett* (244 N. Y. 355), relied on by appellant, for there the owner parted with title to, as well as possession of, his money. He vested in defendant full and complete right to use the money for his own purpose and benefit. The money was given in return for the promise to deliver possession of a certain apartment on a fixed date. Nothing was said that the delivery of the money was conditional on delivery of possession of the apartment. On the contrary, it was understood that defendant had the right to use the money as his own and not for any specific purpose imposed by the owner.

Here the jury was entitled to find that there was no intention on the part of the owner to permit the money to be used for any purpose except purchase of 2,000 shares of Vancouver Island Gold Mine stock. Therefore, he did not part with title to, as well as possession of, the $200. The other elements of the crime being present, a conviction for larceny under a common-law count was warranted.

The judgment should be affirmed.

MARTIN, P. J., TOWNLEY and COHN, JJ., concur; UNTERMYER, J., dissents and votes to reverse and dismiss the indictment.

UNTERMYER, J. (dissenting). The evidence does not establish that the defendant was guilty of common-law larceny which was the only count submitted to the jury. The indictment contained no count charging larceny by false pretenses and there could, therefore, be no conviction for this. (*People* v. *Dumar*, 106 N. Y. 502.) The second count of the indictment charging embezzlement was dismissed at the trial. There could be no conviction for embezzlement under the count charging larceny "with force and arms." (*People* v. *Cruger*, 102 N. Y. 510; *People* v. *Dilcher*, 38 Misc. 89; *Commonwealth* v. *Simpson*, 9 Metc. [Mass.] 138; *Commonwealth* v. *King*, 9 Cush. [Mass.] 284.) It is a cardinal principle of justice that a defendant shall be informed of the nature of the crime with which he is charged. He is not thus informed when he is charged with unlawfully acquiring possession of property and is convicted of misappropriating property of which he acquired lawful possession. The two crimes are not only different in character but entirely inconsistent. Moreover, the evidence would not have sustained a charge of embezzlement, for the $200 was not intrusted to the defendant for any special purpose but was paid to the defendant for his promise thereafter to deliver 2,000 shares of Vancouver Island Gold Mine stock.

On the uncontradicted facts the defendant was not guilty of the charge alleged in the only count of the indictment submitted to the jury. (*Zink* v. *People*, 77 N. Y. 114.) The complainant testified to an agreement under which he paid $200 as the purchase price of the shares of stock to be delivered by the defendant at a future time upon payment of a further sum of $50 to cover the charges for transfer of the shares into the complainant's name. The complainant testified to statements by the defendant that he owned a controlling interest in the company and that the stock was in his name. Clearly, therefore, the complainant agreed to purchase the stock from the defendant and, in accordance with that agreement, intended to pass title of the purchase price to him. He testified to several conversations on the subject at each of which it was made very clear to him by the defendant that he was undertaking to sell stock which belonged to him and which stood in his name. He testified: " He told me the same thing that he told me previously, that I could secure the stock at 10 cents a share, and that I could have the 2,000 shares which would cost me $200, and that it would open on the market at not less than 50 cents a share before Christmas of 1936, and told me that the stock was in his name; that he had the controlling interest in the stock and all the stock was in his name, and in order for him to deliver the stock to me that I would have to pay the transfer charges, the sum of which he named, was $50; and I didn't have the $50 at that time. I only had the $200, and I told him that just as soon as I could raise the $50 for transfer charges that I would ask for the stock and that was agreed upon, and that the stock was to be delivered to me." Again he testified: " He told me that he owned the controlling interest in the Vancouver Island Gold Mines and that he was availing some of the stock to his friends and that I could have some of the stock at 10 cents a share and that it would be placed on the market at not less than 50 cents a share before Christmas in 1936." When the complainant paid the $200 for the stock the following occurred: " I delivered the $200 to him and he asked me if I wanted the stock which had been discussed before, left in his name or he was to put it into my name, and I told him that he had better do what he thought best about that because I was not so well informed on those points; and he explained to me thoroughly that in order to transfer the stock from his name into my name that it would cost him a certain amount of money — that I can't recall. So I told him to do as he saw fit about that and gave him the money at that meeting."

In the light of all this testimony given by the complainant, it cannot be maintained that the $200 was intrusted to the defendant

for the purchase by the defendant of some other person's stock. The complainant also testified: "That Mr. Stiller owned the controlling interest in the Vancouver Island Gold Mine and that he had an amount of stock that he was availing to his friends at 10 cents a share, to be sold on the market at 50 cents before Christmas of 1936."

It is true that in answer to a question by the defendant's attorney, "Therefore, you loaned him this money, you loaned him the money?" the complainant replied, "I didn't lend him the money. I gave him the money specifically to buy Vancouver Island Gold Mine stock." The district attorney now suggests that the complainant intended to testify that he had paid the $200 to the defendant so that he, in turn, might buy the stock *from others*. But, of course, this testimony, especially when read in the light of the complainant's other testimony to which I have referred, does not justify such an assumption. Indeed, when specifically interrogated by the court as to whose stock he intended to purchase, he testified as follows: "Q. You testified that you had a series of conversations with this defendant wherein he told you that he had a controlling interest in this Vancouver Island Gold Mine stock? A. Yes. Q. And that he had a certain amount of stock to dispose of? A. Yes, your Honor. Q. And that he was ready to let you have 2,000 shares at 10 cents a share? A. Yes, sir. Q. And that the stock would be on the Exchange before Christmas at 50 cents a share? A. Yes. Q. Did he tell you whose stock he was going to give you or sell you? A. He said that he owned a controlling interest himself."

It is entirely clear, therefore, that the complainant intended to purchase from the defendant stock which he owned, or was believed to own, and which stood in his name, but which would not be deliverable until an additional $50, to cover transfer charges had been paid. It is evident, therefore, that the complainant parted with the purchase price, intending to pass title to the defendant, though upon representations which the jury found not to have been justified. Under the circumstances there could be no common-law larceny upon the theory that the defendant secured possession of the sum of $200 by trick and device. The situation did not greatly differ from the usual sale of stock for future delivery. The defendant's failure to perform his contract, even assuming that he made it without any intention to perform, did not constitute larceny "with force and arms," as alleged in the indictment. (*People* v. *Noblett*, 244 N. Y. 355; *Zink* v. *People, supra; People* v. *Cohen*, 148 App. Div. 205.)

The judgment should be reversed and the indictment dismissed.

Judgment affirmed.